IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRYAN J. PESTA, | ) | CASE NO. 1:23-CV-00546-DAP |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | |
| | ) | |
| CLEVELAND STATE UNIVERSITY, LAURA BLOOMBERG, HARLAN M. SANDS, BENJAMIN WARD, CHRISTOPHER MALLETT, CONOR McLENNAN, and WENDY REGOECZI, in their individual and official capacities, | ) ) ) ) ) ) ) ) | **DEFENDANTS CLEVELAND STATE UNIVERSITY, LAURA BLOOMBERG, HARLAN M. SANDS, BENJAMIN WARD, CHRISTOPHER MALLETT, CONOR McLENNAN, AND WENDY REGOECZI'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| | ) | |
| Defendants. | ) | |

In the Complaint, Plaintiff Bryan Pesta ("Plaintiff") asserts three claims against Defendant Cleveland State University ("CSU" or "the University") and two claims against the Individual Defendants[1] (collectively, "Defendants"). Plaintiff was a full professor at CSU until his termination in 2022. (Compl. ¶¶ 15, 16). Plaintiff's Complaint concerns his termination. In Counts I and II of the Complaint, Plaintiff alleges First Amendment retaliation and seeks compensatory, punitive, and exemplary damages and attorneys' fees against the University and Individual

---

[1] The Individual Defendants are Harlan Sands, former President of CSU (Compl. ¶ 5); Laura Bloomberg, former Provost of CSU (Compl. ¶ 6); Benjamin Ward, Director of Research Development & Ethics in CSU's Office of Research (Compl. ¶ 7); Christopher Mallett, Professor of Social Work at CSU (Compl. ¶ 8); Conor McLennan, Professor of Psychology at CSU (Compl. ¶ 9); and Wendy Regoeczi, Professor of Criminology, Anthropology, and Sociology at CSU (Compl. ¶ 10).

Defendants. In Count III, Plaintiff seeks declaratory and injunctive relief against the University alone.

As described below, each of these claims is subject to dismissal as follows:

- CSU, an arm of the State of Ohio, and the Individual Defendants in their official capacities are entitled to Eleventh Amendment immunity from suit and thus Counts I, II and III are subject to dismissal pursuant to Federal Rule 12(b)(1) for lack of subject matter jurisdiction.

- The Individual Defendants in their personal capacities are also entitled to qualified immunity that likewise precludes Plaintiff from recovering for his retaliation claims in Counts I and II and thus, they are subject to dismissal pursuant to Federal Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

- The 37-page, 191-paragraph Complaint should be dismissed in its entirety because it is not a short and plain statement of Plaintiff's claims as required by Federal Rule of Civil Procedure 8.

Accordingly, Defendants move this Court to dismiss the Complaint. The reasons supporting this Motion are detailed in the attached Memorandum in Support, which is incorporated herein by reference.

Respectfully submitted,

*/s/ Karen L. Giffen*
Karen L. Giffen (0042663)
Paul J. Neel (0100581)
PEREZ & MORRIS, LLC
1300 East Ninth Street, Suite 1600
Cleveland, Ohio 44114
Telephone: 216-621-5161
Facsimile: 216-621-2399
Email: kgiffen@perez-morris.com
pneel@perez-morris.com
**Counsel for all Defendants**

## MEMORANDUM IN SUPPORT

### I. STANDARDS OF REVIEW.

#### A. Rule 12(b)(1)

Eleventh Amendment immunity operates as a jurisdictional bar that must be decided before a court may reach the merits. *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015). The proper vehicle to raise Eleventh Amendment immunity is a Rule 12(b)(1) motion. *Koukios v. Ganson*, 229 F.3d 1152 (6th Cir. 2000). The Sixth Circuit set forth the procedural framework for motions brought under Rule 12(b)(1):

> Rule 12(b)(1) motions to dismiss based upon subject matter jurisdiction generally come in two varieties. A facial attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading. In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss. On the other hand, when a court reviews a complaint under a factual attack, … no presumptive truthfulness applies to the factual allegations ... [and the] district court must therefore weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist.

*Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir.1990). Here, Defendants mount a facial challenge, contesting the Complaint's allegation that this Court has jurisdiction over the University or Individual Defendants in their official capacity. (Compl. ¶¶ 4-12).

#### B. Rule 12(b)(6)

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a)(2). A claim is well-pleaded when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). Rule 12(b)(6) permits a defendant to seek dismissal based on the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P.

4

12(b)(6). Although a Rule 12(b)(6) motion generally tests the complaint's legal sufficiency, dismissal is also appropriate when the defendant raises an affirmative defense requiring dismissal, such as qualified immunity. *Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016).

## II. CSU IS A PUBLIC UNIVERSITY THAT IS IMMUNE FROM SUIT UNDER THE ELEVENTH AMENDMENT.

Plaintiff brings this action under 42 U.S.C. § 1983 and seeks declaratory relief under 28 U.S.C. §§ 2201-2202. (Compl. ¶ 11). Section 1983 provides that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State…subjects, or causes to be subjected, any citizen of the United States…to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

Neither States nor their agencies qualify as "persons" under Section 1983. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). Furthermore, "[s]overeign immunity generally bars lawsuits against States [and] their agencies" under the Eleventh Amendment. *Mikel v. Quin*, 58 F.4th 252, 256 (6th Cir. 2023) (citing *Torres v. Tex. Dep't of Pub. Safety*, ___ U.S. ___, 142 S. Ct. 2455, 2461–62, 213 L.Ed.2d 808 (2022)). The Eleventh Amendment provides that

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Eleventh Amendment immunity "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments, by citizens of another state, foreigners or its own citizens." *McCormick v. Miami Univ.*, 693 F.3d 654, 661–62 (6th Cir. 2012) (quoting *Thiokol Corp. v. Dep't of Treasury,* 987 F.2d 376, 381 (6th Cir.1993)). Section 1983 does not override a State or State agency's Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 350 (1979).

5

"The great majority of cases addressing the question of Eleventh Amendment immunity for public colleges and universities have found such institutions to be arms of their respective state governments and thus immune from suit." *Hall v. Med. Coll. of Ohio at Toledo*, 742 F.2d 299, 301 (6th Cir. 1984) (citing cases). The Eleventh Amendment therefore operates as a bar to a federal court's jurisdiction. *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 816 (6th Cir. 2000).

CSU is an Ohio public university. *See* Ohio Rev. Code § 3344. Since a public university qualifies as an arm of the State, CSU "is immune from suit under the Eleventh Amendment because it is well-settled that a plaintiff is precluded from directly suing a State in federal court." *See Johnson v. Univ. of Cincinnati,* 215 F.3d 561, 571 (6th Cir. 2000) (applying Eleventh Amendment immunity to a public university as an arm of the State); *see also McCormick*, 693 F.3d at 661-62 (same).

Plaintiff's § 1983 claims do not override the University's Eleventh Amendment immunity. This immunity extends to each of Plaintiff's claims of First Amendment retaliation, in which he seeks monetary relief from the University (Counts I and II). This immunity also extends to Plaintiff's claims for declaratory and injunctive relief (Count III). As against the University, then, Plaintiff's claims for compensatory, punitive, and exemplary damages and attorney's fees under §§ 1983 and 1988, as well as his claims for declaratory judgment (Compl. ¶ 186) and injunctive relief (Compl. ¶¶ 187-191), must be dismissed.

### III. THE INDIVIDUAL DEFENDANTS, IN THEIR OFFICIAL CAPACITIES, ARE ALSO IMMUNE FROM SUIT UNDER THE ELEVENTH AMENDMENT.

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will,* 491 U.S. at 71 (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). "As such, [suing a state official] is no different from [suing] the State itself." *Id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985); *Monell v. New York City Dept. of*

6

*Social Services*, 436 U.S. 658, 690, n. 5 (1978)). Although state officials are clearly persons, the Eleventh Amendment cloaks them with immunity when they are working in their official capacity, and like the State, they are not held to be "persons" under § 1983. *Id.*; *see McCormick*, 693 F.3d at 662 (citing *Will* at 71); *see also Sharma v. Ohio State Univ.*, 25 F. App'x 243, 248 (6th Cir. 2001) (state officials acting in their official capacity are immune from suit for damages). In essence, when acting in their official capacity, state officials "assume the identity of the government that employs them." *Hafer v. Melo*, 502 U.S. 21, 27 (1991).

Here, to the extent that Plaintiff has sued the Individual Defendants in their official capacities, as reflected in the Complaint's caption, the claims against the Individual Defendants for money damages must be dismissed because the Individual Defendants in their official capacities are, like the University, immune from a suit for monetary damages under § 1983. *McCormick* at 662 (citing *Will* at 71); *Sharma* at 248. Accordingly, Plaintiff's claims in Counts I and II for First Amendment retaliation against the Individual Defendants, in which he seeks compensatory, punitive, and exemplary damages and attorney's fees under §§ 1983 and 1988, must be dismissed against the Individual Defendants in their official capacities.

### IV.   THE INDIVIDUAL DEFENDANTS, IN THEIR PERSONAL CAPACITIES, ARE ENTITLED TO QUALIFIED IMMUNITY.

The Eleventh Amendment does not entirely bar suit for damages under § 1983 against state officials when they are sued in their personal capacities. *Hafer*, 502 U.S. at 31. When sued in their personal capacities, state officials have a qualified immunity they may assert as an affirmative defense. *Williams v. Ollis*, 42 F. App'x 694, 695 (6th Cir. 2002).

Qualified immunity protects state officials who perform discretionary functions from liability for damages to the extent that their actions do not violate clearly established statutory or constitutional law that a reasonable person would have known. *Harlow v Fitzgerald*, 457 U.S. 800,

818 (1982); *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013); *Campell v. City of Springboro, Ohio*, 700 F.3d 779, 786 (6th Cir. 2012).

To state a claim for First Amendment retaliation, the plaintiff must show "(1) that the speech was protected by the First Amendment; (2) [that he or she] suffered an adverse employment action; and (3) [that] the adverse action was motivated at least in part in response to the exercise of [his or her] constitutional rights." *Nailon v. Univ. of Cincinnati*, 715 F. App'x 509, 513-514 (6th Cir. 2017) (citing *Savage v. Gee*, 665 F.3d 732, 738 (6th Cir. 2012)). To determine whether Plaintiff plausibly alleged the first element of his retaliation claim—that his speech is protected by the First Amendment—requires application of the *Pickering-Connick* framework. *Meriwether v. Hartop*, 992 F.3d 492, 507 (6th Cir. 2021). Under this framework, a court must ask two questions: (1) Was Plaintiff commenting, as a citizen, on "'matters of public concern,'" and (2) does Plaintiff's interest in such commentary outweigh the Individual Defendants' interest "'in promoting the efficiency of the public services [they] perform[?]'" *Connick v. Myers*, 461 U.S. 138, 142 (1983) (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).

Assuming Plaintiff has alleged facts sufficient to establish that he was commenting, as a citizen, on "matter of public concern," he has not alleged sufficient facts to show that his interest outweighs the Individual Defendants' interest in promoting the efficiency of the public services they perform for the University. This prong of the *Pickering-Connick* framework "asks whether 'the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public' based on the government's needs as an employer." *Buddenberg v. Weisdack*, 939 F.3d 732, 740 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).

8

Plaintiff's Complaint establishes that Plaintiff cannot overcome the Individual Defendants' qualified immunity. Plaintiff alleges that in 2019, he co-wrote and published an article titled "Global Ancestry and Cognitive Ability," drawing on a large data set provided by the National Institute of Health ("NIH"). (Compl. ¶ 30). Plaintiff concedes in his Complaint that using NIH data requires that the user comply with NIH policy, including NOT-OD-07-088, governing the use of genomic data collected by the NIH. (Compl. ¶¶ 29-30, 109, 112). The Complaint alleges that in the spring of 2021, the CSU administration convened a committee to investigate the article's use of the data. (Compl. ¶ 80). The committee was composed of and by CSU faculty and administrators, the named Individual Defendants. (Compl. ¶¶ 5-10, 80). According to the Complaint, the committee reviewed letters from several notable researchers, including Kent Taylor ("Dr. Taylor") of the Lundquist Institute and UCLA professor of pediatrics, wherein Dr. Taylor concluded that Plaintiff's use of the NIH data violated NIH policy NOT-OD-07-088. (Compl. ¶¶ 66, 76, 109, 112, 115). Based on Plaintiff's research-ethics violations, Plaintiff's employment at CSU was terminated in the spring of 2022.

Here, Plaintiff was not terminated for exercising his First Amendment right to publish on race-based issues. While Defendants do not concede that Plaintiff's Complaint fully articulates the basis for Plaintiff's termination, the Complaint itself notes that Plaintiff was terminated for misusing the data he received from the NIH in violation of the NIH's data use agreement and in contravention of basic research ethics. (Compl. ¶¶ 30, 38, 77, 101-102, 107, 109-112, 114). While Plaintiff attempts to reframe his termination as viewpoint discrimination, (Compl. ¶¶ 68, 81, 83, 90, 113, 123, 125, 135, 154), the Complaint itself notes that the committee's inquiry into his research and subsequent recommendation to terminate his employment were based on a "deviat[ion] from commonly accepted practice in the academic community for proposing,

9

conducting, and reporting research." (Compl. ¶¶ 112, 114). The focus of the investigation and termination was Plaintiff's research methodology, which Plaintiff obfuscates by interspersing irrelevant factual allegations within a prolix recitation of the "hereditary hypothesis" to give his claim of viewpoint discrimination the appearance of plausibility.

Meeting the third element of a First Amendment retaliation claim requires Plaintiff to plausibly allege that his termination was caused by an improper desire to censor his protected speech. *King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)). Plaintiff must allege sufficient facts to show that his termination was proximately caused by the Individual Defendants' acts, *Siggers-El v. Barlow*, 412 F.3d 693, 702 (6th Cir. 2005), and that the Individual Defendants' acts were "'motivated in substantial part by a desire to punish [Plaintiff] for exercise of [his] constitutional right.' *Thaddeus-X*, 175 F.3d at 386." *Bocook v. Mohr*, No. 3:16-CV-2291, 2018 WL 4573269, at *3 (N.D. Ohio Sept. 24, 2018) (quoting *King*, 680 F.3d at 695).

Here, Plaintiff names the Individual Defendants based on their involvement in the investigation concerning his research methods, which Plaintiff claims was in acquiescence to demands of various "censors." (Compl. ¶ 81). Despite this contention, however, the Complaint itself points to the reason the investigation started and why it led to Plaintiff's termination. See, e.g., Compl. ¶ 102 ("Indeed, Dr. Jedidiah Carlson, Dr. Cathryn Townsend, and Kevin Bird made clear they only began looking into the *methodology* of Pesta's research…stating 'And so we started looking into, [sic] was this *actually inappropriate use of NIH data*? Are there, or was there, something kind of wrong when it was used for a paper like this?'") (emphasis added); Compl. ¶ 77 ("Dr. Kent referenced 'Global Ancestry and Cognitive Ability,' and stated that…'Use of NIH data for studies of racial differences *in this way* is both a violation of [the] data use agreement and

10

unethical.'") (emphasis added); Compl. ¶ 109 (Reviewing "the final sentence of the [article's] abstract," "Dr. Taylor mentioned…this statement *conflicts with NIH policy NOT-OD-07-0888* on taking care that data avoids stigmatization of US population sub-groups.") (emphasis added); Compl. ¶ 112 (The investigation "committee members asked Dr. Taylor…'[Does the article] deviate[ ] from *commonly accepted practice* in the academic community for *proposing, conducting, and reporting research*?' To which Dr. Taylor replied: 'In my work, this is *clearly outside what you should be doing*.'") (emphasis added).

The Sixth Circuit has held that "an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point" in the litigation. *Buddenberg*, 939 F.3d at 739. The Individual Defendants recognize that this district and the Sixth Circuit generally identify that point as summary judgment and not dismissal under Rule 12(b)(6). *Id.*; *Kesterson v. Kent State Univ.*, No. 5:16-CV-298, 2017 WL 995222, at *16 (N.D. Ohio Mar. 15, 2017). However, in this case, the Complaint, which at its core shows that Plaintiff contravened the ethical use of NIH data in his research, should not survive dismissal based on Plaintiff's reframing the concerns about his research method as concerns about his research conclusions. It should go without saying that unethical research methods inevitably reach problematic conclusions. Plaintiff's attempt to approach the source of the problem from its conclusion and call it viewpoint discrimination is inventive, but backwards.

Thus, Plaintiffs claims against the Individual Defendants in their individual capacities should be dismissed for failure to state a claim upon which relief can be granted.

V. **THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT VIOLATES CIVIL RULE 8.**

In addition to the above grounds supporting dismissal, the Complaint should be dismissed on the grounds that its 37-page, 191-paragraph length, including a diatribe on the debates over race

11

relations and alleged raced-based disparities in human intelligence, obfuscates Plaintiff's claims. Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." While complicated cases generally require more pleading, "Rule 8 proscribes…*obfuscation* of the plaintiff's claims." *Kensu v. Corizon, Inc.*, 5 F.4th 646, 651 (6th Cir. 2021). Neither this Court nor the defendants should have to "'fish a gold coin from a bucket of mud'" to identify the allegations really at issue." *Id.* (quoting *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003)). "When faced with voluminous pleadings, neither the Court nor opposing counsel should be required to expend time and effort searching through large masses of conclusory, argumentative, evidentiary and other extraneous allegations in order to discover whether the essentials of claims asserted can be found in such a mélange." *Schied v. Daughtrey*, No. 08-14944, 2008 WL 5422680 (E.D. Mich. Dec. 29, 2008); *see also Plymale v Freeman*, 930 F.2d 919 (6th Cir. 1991).

Here, Plaintiff's Complaint spends many pages relating the history of the Marshall/Warren Court, President Johnson's 1965 Commencement Address at Howard University, and various examples of the "censorial power" of an alleged social "taboo at work in popular culture go[ing] back decades[.]" Indeed, the Complaint contains page after page of Plaintiff's views on these subjects (See, e.g., Compl. ¶¶ 40-61). The Plaintiff's prolix and discursive Complaint would require this Court and the Defendants to sift through allegations that concern the following irrelevant and confusing topics: a phenomenon Plaintiff describes as the "Gould Effect" relating to the "controversialization" of intelligence research (Compl. ¶ 27); a 1935 paper by Klineberg relating to race differences (Compl. ¶ 43); the controversies "suffered" by various Nobel or Pulitzer Prize Winners (Compl. ¶ 60); alleged reprisals against faculty at institutions other than CSU (Compl. ¶ 61); and the firings of Al Campanis, Jimmy "the Greek" Snyder, Dusty Baker, Rush

Limbaugh, Patrick Buchanan, John Derbyshire, and Jason Richwine (Compl. ¶59). These are but a few examples of Plaintiff's misplaced focus on an alleged political agenda perpetuated by various institutions rather than a "short and plain statement" of the basis for Plaintiff's claims against the Defendants.

"The purpose of Rule 8 is that the adversary party or parties have sufficient notice to prepare their defense and the court is sufficiently informed to determine the issue[s] presented." *916 Radio v FCC.*, No. 05-0719 FCD DAD, 2005 WL 2114187, at *2 (E.D. Cal. August 31, 2005). Federal Rule 8(d)(1) states that "each allegation must be simple, concise, and direct." Read together, Rules 8(a) and 8(d)(1) "underscore the emphasis placed on clarity and brevity by the federal pleading rules." Wright & Miller, *Federal Practice and Procedure*, §1217 at 246. The Complaint in this case does not meet the test of Civil Rule 8. Thus, it should be dismissed.

## VI. CONCLUSION.

As an Ohio public university, CSU is an arm of the state entitled to Eleventh Amendment immunity from suit in federal court for money damages, declaratory relief, and injunctive relief. CSU also does not qualify as a "person" against whom an action may be brought under § 1983. Therefore, Counts I, II, and III against CSU must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction. Likewise, Counts I and II against the Individual Defendants in their official capacities must be dismissed under Rule 12(b)(1) because they assume the identity of the University that employs them and are thus entitled to the same immunity from suits for money damages. In addition, Counts I and II against the Individual Defendants in their personal capacities must be dismissed because the Plaintiffs have qualified immunity based on Plaintiff's failure to establish causation. Despite Plaintiff's attempts to reframe his termination as First Amendment retaliation, Plaintiff was terminated for research-ethics violations, stemming from his misuse of

NIH data in his research. Finally, and in the alternative, the Complaint should be dismissed because it obfuscates the allegations at issue in lengthy discussions of the history, philosophy, politics, and science of racial difference. For each of these reasons, the Defendants request that the Court grant this Motion and dismiss the Complaint in its entirety.

                                         Respectfully submitted,

                                         */s/ Karen L. Giffen*
                                         Karen L. Giffen (0042663)
                                         Paul J. Neel (0100581)
                                         PEREZ & MORRIS, LLC
                                         1300 East Ninth Street, Suite 1600
                                         Cleveland, Ohio 44114
                                         Telephone:   216-621-5161
                                         Facsimile:    216-621-2399
                                         Email:        kgiffen@perez-morris.com
                                                               pneel@perez-morris.com
                                       **Counsel for all Defendants**

## CERTIFICATE OF SERVICE

  A copy of the foregoing was filed electronically on May 22, 2023. Notice of this filing will be sent to all parties through the Court's electronic filing system. Parties may access this filing through the Court's system.

                */s/ Karen L. Giffen*
                Karen L. Giffen (0042663)
                ***Counsel for all Defendants***