IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRYAN J. PESTA, | ) | CASE NO. 1:23-CV-00546-DAP |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | |
| | ) | |
| CLEVELAND STATE UNIVERSITY BOARD OF TRUSTEES, in their official capacities; LAURA BLOOMBERG, in her official and individual capacities; and HARLAN M. SANDS, BENJAMIN WARD, CHRISTOPHER MALLETT, CONOR McLENNAN, and WENDY REGOECZI, in their individual capacities, | ) ) ) ) ) ) ) ) ) ) ) ) | **DEFENDANT CLEVELAND STATE UNIVERSITY BOARD OF TRUSTEES' MOTION FOR JUDGMENT ON THE PLEADINGS** |
| Defendants. | ) | |

New-party Defendant Cleveland State University Board of Trustees respectfully moves this Court for judgment on the pleadings because, like the University, it is immune from suit and Plaintiff Bryan J. Pesta's ("Plaintiff") Amended Complaint fails to state a plausible claim against the Board's individual members. As promised in his Motion for Reconsideration and Leave to Amend, Plaintiff has amended his Complaint to try to bring the University back into this lawsuit. He does so despite the University's Eleventh Amendment immunity from each of Plaintiff's claims, including his claims for prospective declaratory and injunctive relief in Count III. Plaintiff is clear in his Motion for Reconsideration that he believes the University was improperly dismissed from the lawsuit. He believes he needed no "magic words" to sue the University because an official-capacity action is tantamount to a claim against the University itself, and the State of Ohio

by extension. This is a misreading of Eleventh Amendment immunity and the *Ex parte Young* exception on which Plaintiff bases his claims in amended Count III.

As will be discussed more fully in the attached Memorandum, Plaintiff's own case law undermines his argument. Plaintiff knows he cannot sue the University. There is no law to support it. Instead, he attempts to circumvent the Court's dismissal of the University by naming the Board of Trustees, for no apparent reason than that the Board of Trustees serves as easy substitute. This strategy of using so-called "magic words" is plain: Parse the Board of Trustees into its individual members and sue them in their official capacities to reach the University. The problem with this strategy is that the allegations in the Amended Complaint do not support it. The Board of Trustees is not involved in dismissal of tenured faculty who, like Plaintiff, are bargaining members of the American Association of University Professors ("CSU AAUP"). Consistent with this policy, the Board of Trustees had no involvement in Plaintiff's termination. For these reasons, Defendant Cleveland State University Board of Trustees is entitled to judgment on the pleadings dismissing them from this lawsuit.

Respectfully submitted,

*/s/ Karen L. Giffen*
Karen L. Giffen (0042663)
Kerin L. Kaminski (0013522)
Paul J. Neel (0100581)
PEREZ & MORRIS, LLC
1300 East Ninth Street, Suite 1600
Cleveland, Ohio 44114
Telephone: 216-621-5161
Facsimile: 216-621-2399
Email: kgiffen@perez-morris.com
kkaminski@perez-morris.com
pneel@perez-morris.com
**Counsel for all Defendants**

**MEMORANDUM IN SUPPORT**

I.  **FACTUAL BACKGROUND**

Plaintiff was a professor at CSU. His employment at the University was terminated based on several research ethics violations. Board's Answer to Amended Complaint, ¶ 130; Dr. Bloomberg's January 13, 2022 Letter to Plaintiff, attached to the Board's Answer as Exhibit 3. These violations relate to Plaintiff's unauthorized use of data he requested from the National Institutes of Health ("NIH") and cited in a paper he coauthored titled "Global Ancestry and Cognitive Ability." Exhibit 3, p. 1. Following the paper's publication, the NIH investigated and found that Plaintiff had misused data from the NIH's database of Genotypes and Phenotypes ("dbGaP") in contravention of the NIH's data-use agreement. Exhibit 3, p. 2. The NIH subsequently revoked Plaintiff's access to the dbGaP and banned him from accessing any NIH controlled-access datasets for a period of three years. Exhibit 3, p. 2. The ban was the most serious and longest ever imposed by the NIH. Exhibit 3, p. 2.

Following the NIH findings, the University launched an internal investigation conducted by a committee of Plaintiff's peers under the University's Research Misconduct Policy (3344-28). Exhibit 3, p. 1. After a months-long investigation, the committee confirmed that Plaintiff had misused controlled-access data from the NIH dbGaP, published his research findings without authorization by the NIH, exceeded Institutional Review Board approval, and obtained and used research funding without the University's approval. Exhibit 3, p. 1. The committee documented its findings in a report that was submitted to then Provost Dr. Laura Bloomberg for review. Exhibit 3, p. 1. After reviewing the committee's report and all the evidence, including Plaintiff's own testimony and rebuttal to the committee's report, Dr. Bloomberg determined that Plaintiff had violated basic research ethics and procedures and that these violations were equally damaging to

Plaintiff's reputation and the University's reputation. Exhibit 3, p. 4, 7. Based on the severity of Plaintiff's research misconduct, Dr. Bloomberg recommended that Plaintiff be dismissed from the University faculty. Exhibit 3, p. 7.

Following Dr. Bloomberg's recommendation, an ad-hoc committee was convened to review the proposed sanctions pursuant to the University's Collective Bargaining Agreement ("CBA") with the CSU AAUP. Exhibit 3, pp. 7-10. As provided by the CBA, the ad-hoc committee was comprised of three faculty members of the CSU AAUP and three CSU academic administrators, who held a hearing at which the basis for the proposed discipline was presented and Plaintiff was given an opportunity to respond. Exhibit 3, pp. 7-10; Board's Answer to Amended Complaint, ¶ 130; Dr. Bloomberg's February 28, 2022 Letter to Plaintiff, attached to the Board's Answer as Exhibit 4. Following the hearing, the ad-hoc committee voted unanimously in support of Dr. Bloomberg's recommendation of dismissal. Exhibit 4, p. 1. Plaintiff was subsequently terminated effective March 4, 2022. Exhibit 4, p. 1.

## II. PROCEDURAL HISTORY

A year later, on March 16, 2023, Plaintiff filed his Complaint in this Court, alleging First Amendment retaliation against the University and several members of the University faculty and academic administration ("Individual Defendants"), seeking compensatory, punitive, and exemplary damages and attorney's fees (Counts I and II), and declaratory and injunctive relief against the University alone (Count III).

On May 22, 2023, the University and Individual Defendants filed a Motion to Dismiss the Complaint under Rule 12(b)(1) as to the University and Individual Defendants in their official capacities and under Rule 12(b)(6) as to the Individual Defendants in their individual capacities. On July 14, 2023, this Court granted the Motion under Rule 12(b)(1), dismissing the University

4

and Individual Defendants in their official capacities from Counts I, II, and III of the Complaint, but denied the Motion under Rule 12(b)(6). The Individual Defendants in their individual capacities filed their answer to Counts I and II of the Complaint on August 4, 2023.

A week later, on August 11, 2023, Plaintiff filed a Motion for Reconsideration and Leave to Amend the Complaint, arguing (1) the Individual Defendants in their official capacities were improperly dismissed with prejudice, (2) it was Plaintiff's intention to bring Count III against Dr. Bloomberg in her official capacity as well as the University, and (3) even if Dr. Bloomberg was not named in Count III, a claim against the University is the same as a claim against Dr. Bloomberg in her official capacity because, at the time, Dr. Bloomberg was the University's ranking academic officer and is now the University's chief academic officer. In his Motion, Plaintiff maintained that no "magic words" are needed to seek declaratory and prospective injunctive relief from a state official pursuant to the *Ex parte Young* exception to Eleventh Amendment immunity. Motion for Reconsideration, Doc. # 13, PageID # 210. A few days later, on August 16, 2023, the Court granted Plaintiff's Motion for Reconsideration, amending the prior dismissals from with prejudice to without prejudice, and granted Plaintiff leave to amend the Complaint.

On September 22, 2023, Plaintiff filed his Amended Complaint. Doc. # 18. The Amended Complaint alleges First Amendment retaliation against the Individual Defendants in their individual capacities for investigating and terminating Plaintiff (Counts I and II), and seeks compensatory, punitive, and exemplary damages and attorney's fees. The Amended Complaint also seeks declaratory and injunctive relief against Dr. Bloomberg in her official capacity and new-party Defendant the CSU Board of Trustees, as well as each member of the Board in his or her official capacity (Count III).

Plaintiff has wrongly named the Board of Trustees in his Amended Complaint. Although Plaintiff takes pains to name each of the Board's members, the Amended Complaint simultaneously refers to the Board as a collective and as composed by its individual members. To the extent that Plaintiff sues the Board of Trustees as an entity, Eleventh Amendment immunity precludes the suit on the same grounds that precluded Plaintiff's suit against the University. In addition, Plaintiff has not, because he cannot, plausibly allege any wrongdoing on the part of the Board's individual members because neither the Board nor its members have any involvement in dismissing a tenured faculty member who is a bargaining member of the CSU AAUP. Because Plaintiff's allegations against the Board are wholly based on his *belief* that it approved Plaintiff's termination, Plaintiff's claims against the Board cannot be maintained. For these reasons, the Board of Trustees is entitled to judgment on the pleadings.

### III. LAW AND ARGUMENT

#### A. The Board of Trustees and/or Its Individual Members Are Entitled to Judgment on the Pleadings.

A motion for judgment on the pleadings is governed by Fed. R. Civ. P. 12(c). Under Rule 12(c), a party may move for judgment on the pleadings any time after the pleadings are closed but early enough not to delay trial. Fed. R. Civ. P. 12(c). The same standard applies to a motion for judgment on the pleadings that applies to a Rule 12(b)(6) motion to dismiss. *Moore v. Hiram Twp.*, 988 F.3d 353, 357 (6th Cir. 2021). When ruling on a motion for judgment on the pleadings, the court must take as true all well-pleaded material allegations in the opposing party's pleadings and my grant the motion if the pleadings show that the movant is entitled to judgment. *Id.* (*Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008)). "To survive a Rule 12(c) motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017) (internal quotation

6

marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

Under the plausibility standard, the complaint must assert claims that are "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A complaint that merely offers "labels and conclusions or a formulaic recitation of the elements of a cause of action," "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," or "naked assertions devoid of further factual enhancement" does not suffice. *Id.* (quoting *Twombly*, 500 U.S. at 555, 557). Rather, to be well-pleaded, the complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When determining a Rule 12(c) motion, the court may consider all available pleadings, including the complaint and the answer. *See* Fed. R. Civ. P. 12(c). *Robertson v. Univ. of Akron Sch. of Law*, No. 5:20-cv-1907, 2021 U.S. Dist. LEXIS 157345, at *10-12 (N.D. Ohio Aug. 20, 2021). "The court [may] also consider: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion for judgment on the pleadings that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice." *Id*. (quoting *Dudek v. Thomas & Thomas Attorneys & Counselors at Law, LLC*, 702 F. Supp. 2d 826, 832 (N.D. Ohio 2010) (citations omitted)).

### B. Claims in the Amended Complaint against the Board of Trustees as Entity Must Be Dismissed Because the Board Is Immune from Suit.

Plaintiff relies upon the *Ex parte Young* exception to Eleventh Amendment immunity in naming the Board of Trustees as a new-party Defendant. However, just as the University is an arm

of the State of Ohio, so too is the Board of Trustees. *See McKenna v. Bowling Green State Univ.*, 568 F. App'x 450, 457 (6th Cir. 2014) (holding that Eleventh Amendment immunity attaches to BGSU and its Board of Trustees and the *Ex parte Young* exception does not apply because neither the University nor the Board are state officials). Furthermore, Plaintiff brings this action for declaratory and injunctive relief against the Board of Trustees under 42 U.S.C. § 1983, but the Board of Trustees is not a "person" subject to suit under § 1983. *Id.* at 456 (citing *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)).

Plaintiff will surely direct the Court's attention to the Amended Complaint's references to the Board's individual members in their official capacities as the "magic words" he needs to maintain Count III against the Board. However, the Amended Complaint is riddled with inconsistencies between the Board as entity and as comprised of individuals. First, the caption names the Cleveland State University Board of Trustees in their official capacities rather than naming the Board's individual members in their official capacities. Second, the Amended Complaint identifies individual Board members, but then states that Plaintiff is bringing Count III against the individual members and the Board simultaneously: "In such official capacity, they / it are sued under Count 3 only." Amended Complaint, ¶ 5, PageID # 298. The Amended Complaint likewise refers to the Board as an "entity." Amended Complaint, ¶ 40, PageID # 303. Third, it is unclear whether Plaintiff asserts Count III against the current or prior Board of Trustees because Count III identifies the current Board but the allegations center on the prior Board.

Plaintiff is clear in his Motion for Reconsideration that he believes asserting Count III against individuals in their official capacity is tantamount to asserting his claims against the University itself and, therefore, he properly pled Count III in his original Complaint. Motion for Reconsideration, PageID # 210. In support of this contention that an official-capacity suit is a legal

8

fiction to reach the State, Plaintiff cites *Does v. Whitmer*, 69 F.4th 300 (6th Cir. 2023), noting that official-capacity suits are nominally against the official but really against the official's office and, therefore, against the sovereign itself. *Id.* at 305 n.4 (citing *Lewis v. Clarke*, 581 U.S. 155, 162, 137 S. Ct. 1285, 197 L. Ed. 2d 631 (2017)).

In citing *Does*, Plaintiff overlooks the reason the Sixth Circuit noted the legal fiction in the first place: Plaintiffs often use the words "individual capacity," or in this case "official capacity," merely nominally to circumvent the Eleventh Amendment bar to their claims. Recognizing this, the *Does* Court noted that "'courts may not simply rely on the characterization of parties in the complaint,'" but rather "must 'look to whether the sovereign is the real party in interest,' by determining, 'in the first instance whether the remedy sought is truly against the sovereign.'" *Id.* at 306 (quoting *Lewis* at 161-162). Plaintiff's Motion for Reconsideration clearly indicates that he intends to reach CSU by replacing the University with the Board of Trustees in Count III and referring to the Board in the Amended Complaint at once as entity and individuals.

Because Plaintiff expressed his intent to sue the University through its officers, clearly names the Board of Trustees as its replacement in Count III, and slips between entity and individuals when referring to the Board throughout the Amended Complaint, the Court should look past Plaintiff's nominal references to the Board's individual members and take Count III as Plaintiff intended: a claim for declaratory and injunctive relief against the Board of Trustees that is barred by the Eleventh Amendment.

### C. The Amended Complaint Fails to Allege Sufficient Facts to Obtain Declaratory or Injunctive Relief against the Individual Members of the Board of Trustees.

Even if Plaintiff asserts Count III of the Amended Complaint against the individual members of the Board of Trustees in their official capacities on the theory that they are persons

9

subject to prospective declaratory and injunctive relief under § 1983, Plaintiff must still allege under the *Ex parte Young* exception that the individual members of the Board of Trustees in their official capacities had some direct connection to or responsibility for the alleged deprivation of Plaintiff's constitutional rights. *See Allied Artists Picture Corp. v. Rhodes*, 679 F.2d 656, 665 n.5 (6th Cir. 1982) (noting that the *Ex parte Young* exception requires that the state official have "some connection" to the unconstitutional conduct to be a proper defendant subject to declaratory and injunctive relief); *Ohio v. Madeline Marie Nursing Homes # 1 & # 2*, 694 F.2d 449, 459 n.9 (6th Cir. 1982) (noting that the *Ex parte Young* doctrine is limited by the requirement that an action against a state official must be "based on a theory that the officer acted beyond the scope of his statutory authority or, if within that authority, that such authority is unconstitutional") (quoting *Florida Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 689-90, 102 S. Ct. 3304, 73 L. Ed. 2d 1057, (1982)).

Courts in other circuits recognize this same requirement under *Ex parte Young*. *See, e.g., Jones-Soderman v. Exec. Sec'y of the State Bd.*, No. 08 CV 4716 (SJF) (LB), 2010 U.S. Dist. LEXIS 99768, at *21 (E.D.N.Y. May 21, 2010) ("Actions involving claims for prospective declaratory or injunctive relief are permissible provided the official against whom the action is brought has a direct connection to, or responsibility for, the alleged illegal action") (quotations and citations omitted); *see also McMillen v. Wetzel*, Civil Action No. 20-192J, 2021 U.S. Dist. LEXIS 181430, at *7 (W.D. Pa. Sep. 22, 2021) (same).

Plaintiff has not, because he cannot, plausibly allege that the Board of Trustees had a direct connection to or responsibility for his termination. Count III of the Amended Complaint is wholly based on Plaintiff's belief that "a majority of the Prior Board of Trustees [officially approved Plaintiff's termination] at an executive session of the Board of Trustees on January 27, 2022."

10

Amended Complaint, ¶¶ 158-159, PageID # 323. However, nothing in the minutes of the Board's January 27, 2022 meeting supports Plaintiff's allegation. Board's Answer to Amended Complaint, ¶ 131; Minutes of January 27, 2022 Meeting of Board, attached to the Board's Answer as Exhibit 5. It is not a role of the Board of Trustees to approve the termination of a bargaining member of the University faculty. Board's Answer to Amended Complaint, ¶¶ 130-131.

The two letters Plaintiff received from Dr. Bloomberg both detail the University's process for investigating and terminating him. Board's Answer to Amended Complaint, ¶ 130; Exhibits 3 and 4. Neither letter states that Plaintiff's termination would be subject to Board approval. Furthermore, although the CBA expressly states that faculty *appointments* are subject to final Board approval, there is no corresponding provision that the *termination* of a faculty member requires final Board approval. Board's Answer to Amended Complaint, ¶ 119; CBA, attached to the Board's Answer as Exhibit 1 (Compare Art. 12 of the CBA on Faculty Appointment with Art. 8 on Sanction and Dismissal). Consistent with the CBA, the Bylaws of the Board of Trustees also provide that while dismissal of *non-bargaining* members of the faculty requires Board approval, the same is not true of *bargaining* members because they are instead subject to the CBA's procedures on dismissal. Board's Answer to Amended Complaint, ¶ 119; Bylaws, attached to the Board's Answer as Exhibit 2 (See 3344-1-04(D), focusing on Board action in non-bargaining unit faculty dismissals).

The allegations in Count III of the Amended Complaint fail to show the Board's direct connection to or responsibility for Plaintiff's termination. Without plausibly establishing this connection, Plaintiff cannot maintain an action for prospective declaratory and injunctive relief against the Board's individual members in their official capacity.

IV.    **CONCLUSION**

11

A plain reading of Plaintiff's Amended Complaint shows that he brings Count III against the Board as entity. A reading the Amended Complaint in the context of Plaintiff's Motion for Reconsideration and Leave to Amend shows that it is his intention in amended Count III to reach the University through its Board of Trustees, despite the University's Eleventh Amendment immunity. Like the University, however, the Board is immune from suit and must be dismissed from this case.

Plaintiff also believes that under the *Ex parte Young* exception he can assert claims for prospective declaratory and injunctive relief against the University merely by naming the University's officials in their official capacity. As the Sixth Circuit and courts in other circuits have held, however, the *Ex parte Young* exception is not as broad as Plaintiff maintains. To properly assert claims for prospective declaratory and injunctive relief against a state official, a plaintiff must plausibly allege that the state official has a direct connection to or responsibility for the alleged illegal action. This Plaintiff cannot do. Plaintiff's claims against the individual members of the Board of Trustees are entirely predicated on his mistaken belief that the Board approved his termination. The Board has no such role.

For these reasons, the Board and its individual members in their official capacities are entitled to judgment on the pleadings and dismissal from this lawsuit.

Respectfully submitted,

*/s/ Karen L. Giffen*
Karen L. Giffen (0042663)
Kerin L. Kaminski (0013522)
Paul J. Neel (0100581)
PEREZ & MORRIS, LLC
1300 East Ninth Street, Suite 1600
Cleveland, Ohio 44114
Telephone:	216-621-5161
Facsimile:	216-621-2399
Email:	kgiffen@perez-morris.com
	kkaminski@perez-morris.com
	pneel@perez-morris.com
**Counsel for all Defendants**

## CERTIFICATE OF SERVICE

A copy of the foregoing was filed electronically on October 31, 2023. Notice of this filing will be sent to all parties through the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Karen L. Giffen*
Karen L. Giffen (0042663)
***Counsel for all Defendants***
