IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRYAN J. PESTA, | ) | CASE NO. 1:23-CV-00546-DAP |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | |
| | ) | |
| LAURA BLOOMBERG, in her official and individual capacities; and HARLAN M. SANDS, BENJAMIN WARD, CHRISTOPHER MALLETT, CONOR McLENNAN, and WENDY REGOECZI, in their individual capacities, | ) ) ) ) ) ) ) ) | **AFFIDAVIT** |
| | ) | |
| Defendants. | ) | |

STATE OF OHIO        )
                     )   SS
COUNTY OF CUYAHOGA   )

Affiant Benjamin Ward being first duly sworn, herby deposes and states as follows:

1. At all relevant times I was employed by Cleveland State University ("CSU").and am the Director of Research Development and Ethics ("Director") in the Office of Research and I have, since August 2020, been the Research Integrity Officer managing research misconduct cases. I am over the age of eighteen (18) and make this affidavit based on personal knowledge.

2. At the time of the events at issue in the above captioned case began I was the interim Associate Vice President and my role changed to Director in April of 2021.

3. I reviewed the issues the National Institute of Health ("NIH") informed CSU it had with Brian Pesta ("Pesta") when those issues were presented to me by the then serving Provost and I determined that the proper step would be for CSU to convene a committee to investigate the allegations of research misconduct.

4. The communications from NIH attached to the Motion for Summary Judgment are true and accurate copies of the communications received by CSU from the NIH and

1

kept in the regular course of CSU's business and to which CSU responded as required.

5. Three faculty members were selected to serve on the committee to investigate the allegations by the NIH that Pesta committed research misconduct. ("Investigation Committee")

6. In convening the Investigation Committee, CSU substantially complied with the rules and regulations regarding the purpose and procedure of having a review of potential research misconduct.

7. I worked with the Investigation Committee to coordinate its work and provide administrative support. In so doing, I helped to prepare the final report drafted by the Investigation Committee in which Pesta was found to have committed research misconduct because he failed to truthfully and completely disclose to the NIH and to CSU the exact nature of the research he intended to conduct, the manner by which he would conduct the research and persons with whom he would conduct the research that led to his publication of the Global Ancestry paper.

8. Pesta was afforded substantial and repeated opportunities to present his defenses to the allegations of research misconduct to the Investigation Committee.

9. The Investigation Committee substantially complied with all requirements and procedures for how it conducted the investigation and any deviations in procedure were minor and did not impact the outcome.

10. The well-known principles of academic freedom are protected at CSU and applied to the research by Pesta and to his publication of the Global Ancestry paper.

11. Many research projects are undertaken at CSU that are controversial, in fact, almost all research conducted is in some measure controversial because other researchers often disagree with the research or the interpretation of the results. Controversy is implicit in scientific inquiry.

12. CSU has a valid and vital interest in making sure that research is conducted in accord with commonly accepted practices.

13. CSU maintaining a relationship with the NIH whereby the NIH is interested in working with CSU faculty and employees is very important to the vitality of CSU's research community.

14. Many of the procedures the Office of Research Integrity works with on a daily basis are found in the Ohio Administrative Code and in particular Chapter 3344.

15. The Office of Research assists researchers in managing aspects of research and ethical standards.

16. The Investigative Committee was a fact-finding committee and was not a decision maker regarding what, if any, discipline was appropriate if research misconduct was found.

17. CSU also has an Institutional Review Board ("IRB"). The IRB is composed of faculty members, and it reviews and monitors research that involves human subjects.

18. The IRB assures, both in advance and by periodic review, that appropriate steps are taken to protect the rights and welfare of humans participating as subjects in the research.

19. While people outside of CSU had written CSU to complain about the research by Pesta, CSU took no action on any of these complaints primarily because the NIH was already investigating the matter and the NIH was in the best position to determine whether NIH rules and agreements had been violated.

20. One of the findings by the Investigative Committee that I reviewed the evidence regarding while working with the Investigative Committee included the strong evidence that demonstrated that Pesta uploaded the controlled-access TCP data provided by the NIH to an online website that performed phenotyping services outside the United States without NIH permission. Pesta admitted this during the investigation by the Investigative Committee.

21. All of the defenses and arguments made by Pesta, both in writing and orally, made by Pesta to the Investigative Committee were provided to each member of the Investigative Committee and Pesta was provided an unfettered opportunity to provide evidence and argument to the Investigative Committee.

22. After the NIH instructed CSU to delete all protected data, I attempted to contact John Fuerst to get him to confirm whether he had any of the protected data, whether the data had been deleted from his computer systems, and to sign a certification to that effect. A true and accurate copy of that correspondence is attached as an Exhibit to the Motion for Summary Judgment John Fuerst took issue with the request and said NIH had no right to request deletion of the data. He refused to comply with the request by the deadline established by CSU.

23. The NIH informed CSU that the sanction imposed on Pesta for his misconduct was the longest, most severe sanction NIH had imposed on anyone.

24. I did not consider the subject matter of the Global Ancestry paper in performing my duties working with the Investigative Committee and was clear in helping the Investigative Committee do its work that the investigation was into research misconduct as found by the NIH and was not based on the subject matter of the Global Ancestry paper.

FURTHER AFFIANT SAYS NOTHING.

_____
Benjamin Ward

SWORN TO BEFORE ME and subscribed in my presence this 24th day of July 2024.

JACK N. KRASZEWSKI
Attorney at Law
NOTARY PUBLIC — Notary Public
STATE OF OHIO
My Commission Has
No Expiration Date
Section 147.03 O.R.C.

4